UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

YING HUA TAM, aka YING HUA HUANG,      Case No. DK 12-06379
                                   Chapter 11
          Debtor.                 Hon. Scott W. Dales

_____/

OPINION AND ORDER
REGARDING LIFT STAY AND RECEIVER MOTIONS

PRESENT:    HONORABLE SCOTT W. DALES
                  United States Bankruptcy Judge

I. INTRODUCTION

Ying Hua Tam, without benefit of counsel, filed a voluntary petition for relief under Chapter 11 with this court on July 9, 2012. The court has not appointed a trustee, so Ms. Tam (the "Debtor") continues as a debtor in possession. Shortly after the petition date, Marquette Bank (the "Bank"), identified in Schedule D as the holder of a lien on "four multi-family properties with 72 units," filed two motions. The first seeks relief from the automatic stay, and the second proposes to excuse a state court receiver (the "Receiver") from relinquishing the four properties to the Debtor under 11 U.S.C. § 543(d).[1]

The court held a hearing to consider the Lift Stay Motion and the Receiver Motion on August 8, 2012 in Kalamazoo, Michigan. The Debtor appeared with family members but without counsel; the Bank appeared through counsel. The United States Trustee also appeared, but did not otherwise participate in the hearing.

_____

[1] For convenience, the court will refer to the Motion of Marquette Bank for Relief from the Automatic Stay (DN 13) as the "Lift Stay Motion," and the Motion of Marquette Bank to Excuse Receiver from Compliance Under 11 U.S.C. Section 543(d) (DN 16) as the "Receiver Motion."

Ms. Tam is not a native English speaker, so with the concurrence of the parties the court qualified and administered an oath to two interpreters under Fed. R. Evid. 603, at different points in the hearing. Ms. Tam offered three exhibits, which the court accepted without opposition. After listening to the parties' arguments, the court took both motions under advisement. For statutory and practical reasons, the court must rule quickly. This opinion, though somewhat abbreviated given time constraints, will explain the court's reasons for granting both motions.

## II. JURISDICTION

The court has jurisdiction over the Debtor's case pursuant to 28 U.S.C. § 1334(a). The case and these contested matters have been referred to the court pursuant to 28 U.S.C. § 157(a), and LCivR 83.2(a) (W.D. Mich.). The contested matters are 'core proceedings' under 28 U.S.C. § 157(b)(2)(A), (E) & (G). The court, therefore, has authority to hear and determine the contested matters.

## III. ANALYSIS

1. Lift Stay Motion

The Bank relies on the traditional grounds for stay relief under 11 U.S.C. § 362(d), which provides in relevant part as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d)(1) & (d)(2).[2]   Under 11 U.S.C. § 362(g), the Bank has the burden of proof on the issue of the debtor's equity in property, and Ms. Tam, as the party opposing stay relief, has the burden of proof on all other issues.

In accordance with 11 U.S.C. § 362(e)(1) and LBR 4001-1 (c), the court set the Lift Stay Motion for a preliminary hearing.  According to local policy and practice, at a preliminary hearing the court will determine:

> (A) whether material, disputed issues of fact exist, and (B) whether there is a reasonable likelihood that the party opposing the relief will prevail. These issues will be decided solely on the arguments of counsel and will be limited to no more than one hour unless the Court, on its own or on prior request of counsel, permits otherwise.

LBR 4001-1(c) (Aug. 1, 2012 revision).    The Lift Stay Motion, supported by documents and affidavits, recites that the Bank has a lien on three parcels of real estate in Chicago, IL, and one parcel in Oak Forest, IL, all of which are arguably included within the Debtor's bankruptcy estate. The Debtor's Schedules A & D confirm that she has an interest in the four parcels, subject to the Bank's lien. The Debtor did not indicate in Schedule D that the Bank's claim is unliquidated, contingent or disputed.

---

[2] In addition, the Bank invokes Section 362(d)(4), arguing that the filing of Ms. Tam's petition was part of "a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4). That subsection grants relief beyond merely lifting the stay, but it also requires a "finding" that the court is neither prepared nor permitted to make at a preliminary hearing under our local practice. Unless the Bank withdraws the request for the additional relief under 11 U.S.C. § 362(d)(4), the court will consider it at the final hearing scheduled to take place August 29, 2012, at 10 a.m. in Kalamazoo.  That hearing will be an evidentiary hearing as provided by local rule.  The parties should be prepared to proceed with witnesses and an interpreter, as necessary.

The record establishes no factual dispute, for purposes of this summary motion, that the Bank had a claim in the amount of at least $2,400,000.00 according to Schedule D, though the Bank sets its claim at $2,411,669.10 according to the Cook County Circuit Court Judgment of Foreclosure and Sale.  *See* Lift Stay Motion at Exh. G.  The affidavit of James P. Konrath, an appraiser, states that the four parcels are worth $2,400,000.00 as of March 5, 2011, according to his appraisal.

For her part, the Debtor asked the court to consider an appraisal from 2008 (Exh. B), relating to the "Hickory Hills" property only, indicating a market value of $785,000.00.  The values set forth on Schedule A are considerably higher, in the aggregate, than the Bank's $2,400,000.00 estimate, but other than the four-year-old appraisal, the Debtor  pointed to no evidence of value.

With even a modest allowance of liquidation costs, and given the Debtor's unfocused presentation at the preliminary hearing, the court cannot identify any material factual dispute regarding the absence of equity in the four parcels.  *See* 11 U.S.C. § 362(d)(2)(A).[3]

With respect to the relationship of the four parcels to the Debtor's reorganization, Ms. Tam offered no information or forecast regarding any plan she has for reorganization, beyond her understandably emotional plea to get the properties back from the Receiver.   By opposing the Lift Stay Motion, Ms. Tam assumed the burden of showing that the four parcels are necessary to an effective reorganization. "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the

---

[3] The court notes, too, that documents attached to the Lift Stay Motion state that the Bank made a credit bid at the foreclosure sale and became the successful bidder. *See* Lift Stay Motion at Exh. H.  The credit bid would of course reduce the Bank's claim, but only if the state court confirms the foreclosure sale. Sale confirmation, which would eliminate any conceivable argument about equity, was imminent, and likely prompted the Debtor to file her bankruptcy petition when she did.

property is essential for an effective reorganization that is in prospect." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988).  Perhaps given the language barrier or perhaps given the absence of any planning for reorganization, Ms. Tam offered no argument, nor did she proffer any evidence, on this crucial point, even allowing that her case is in its infancy.

Indeed, it plainly appears from Schedule J that, after deducting living expenses, the Debtor's household nets only $290.00 per month. Schedule I recites that she is a waitress.  With no significant challenge to the Bank's assignment of rents presented at the hearing, and mindful that the Cook County Circuit Court has already blessed the assignment and "terminated" the rights of the Debtor and her husband in the four parcels which the Bank purchased at foreclosure sale,[4] the court fails to understand what funds exist to finance the administration of this case.  For that matter, the court perceives no reasonably likely means for this debtor to reorganize an estate that (assuming the Debtor is somehow permitted to unwind the foreclosure) would include 72 multi-family apartments in another state.

Moreover, as a debtor in possession, Ms. Tam is the estate's fiduciary. Yet, obviously aware of her lack of proficiency in English, she came to the preliminary hearing unprepared to oppose the Lift Stay Motion, relying on her well-meaning daughter to translate the court proceedings.  More significantly, she endeavored to oppose the Bank's motions, ostensibly as the estate's representative, without counsel.  Although the court recognizes that individuals may appear in federal court without counsel, 28 U.S.C. § 1654, a Chapter 11 debtor in possession is fiduciary who does not simply act for herself.  Judging from the Debtor's lack of preparation, her obvious reliance on insiders for advice, and her uneasy and confusing presentation of the estate's

---

[4] *See* Lift Stay Motion at Exh. G & H.

position during the preliminary hearing, the court doubts whether she is capable of serving as a fiduciary, without counsel, under the circumstances. The court does not suggest that individual Chapter 11 debtors invariably require counsel, but only that the absence of counsel in this case bodes poorly for any realistic prospect of reorganization. This is especially true, considering the nature of the estate property, the advanced stage of the foreclosure proceedings, the active secured creditor, and the allegations of misconduct and other complex issues mentioned during yesterday's hearing.

To a considerable extent, the Bank's motion is also premised on "cause" deriving from the litigation history. Specifically, the Bank argues that the court may find cause to lift the stay in the uncontested allegations that the Debtor, her husband and other insiders filed removal notice and bankruptcy petitions in three separate federal courts to thwart the foreclosure process because they were unsuccessful in state court. Both types of federal process automatically stay state court proceedings, interfering substantially with state authority. *See* 11 U.S.C. § 362(a) (automatic stay); 28 U.S.C. § 1446(d). Such interference is frequently justified, but when abused, the federal courts have authority to dismiss or remand, as the case may be. There is no dispute that two sister courts have done so with respect to the prepetition procedural wrangling of the Debtor and her husband. The Debtor has not disputed the fact of the removals, remands, bankruptcy filings, and dismissals as set forth in the Lift Stay Motion. The Debtor raised no meaningful question at the preliminary hearing that cause exists to lift the stay. *See* LBR 4001-1(c).

The court has carefully considered the Lift Stay Motion and has determined that the Debtor has not identified any disputed issues of fact material to the issue of the equity in the four Illinois parcels or her prospects for reorganization. Moreover, the numerous, undisputed procedural attacks on the state court proceedings persuade the court that the Debtor will not

likely prevail on the "cause" element at the final hearing.  The Bank and the state court have endured substantial and unwarranted delays already.  Accordingly, the court will grant the Lift Stay Motion at this time, in an order that will be immediately effective notwithstanding Fed. R. Bankr. P. 4001(a)(3).

The court is aware that the Bank has also argued that the filing of Ms. Tam's petition was part of "a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4). That subsection permits the court to grant *in rem* relief to take effect in future cases, but it also requires a "finding" that the court is neither prepared nor permitted to make at a preliminary hearing under our local practice.  Unless the Bank withdraws the request for the additional relief under 11 U.S.C. § 362(d)(4), the court will consider it at the final hearing scheduled to take place August 29, 2012, at 10 a.m. in Kalamazoo. That hearing will be an evidentiary hearing as provided by LBR 4001-1(c)(2), and the parties should be prepared to proceed with witnesses and an interpreter, as necessary.

The Bank's counsel shall prepare a separate order granting the Lift Stay Motion, consistent with the court's ruling.

2. Receiver Motion

Despite numerous interruptions and stays resulting from the Debtor's and her husband's resort to the federal bankruptcy and district courts in Illinois, Indiana, and now Michigan, the Cook County Circuit Court appointed a Receiver in the foreclosure action entitled *Marquette Bank v. Warren O. Tam, et al.*, case number 10-CH-34805 (the "Foreclosure Action").  The Debtor, as one of the mortgagors, is a defendant in the Foreclosure Action.

The Receiver or his predecessor has been managing the 72 apartment units under the state court's supervision for roughly sixteen months.  According to documents attached to the Receiver Motion, the state court conducted a foreclosure sale at which the Bank was the successful bidder. *See* Receiver Motion at Exh. G & H.  The court infers that the sale, though in some sense complete, has not yet been confirmed in accordance with Illinois foreclosure law.

The Debtor's filing of her voluntary petition, of course, imposed upon the Receiver—a "custodian" as defined in 11 U.S.C.§ 101(11)(A)—the obligation to deliver property of the estate to the trustee, or in this case, the Debtor as debtor in possession,[5] and to provide an accounting.  *See* 11 U.S.C.§ 543(b).   Nevertheless, the Bankruptcy Code also acknowledges that, in some cases, divesting a custodian of estate property may not serve the interests of creditors.  *See* 11 U.S.C.§ 543(d).  In an appropriate case, after notice and a hearing, the court may excuse a custodian from complying with the turnover and other obligations that would otherwise apply under the statute.

Other courts, including this court in the case of *Bear Creek Partners I, LLC*, Case No. 10-07906, have considered similar requests from custodians to excuse compliance with 11 U.S.C.§ 543, and have concluded that the likelihood of a successful reorganization weighs heavily in the balance. More generally, the interest of creditors is paramount. *In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 332 (Bankr. S.D. Ohio 1990). Considering these factors, coupled with the court's decision to grant the Lift Stay Motion, the court easily concludes that it should excuse the Receiver from his obligations under 11 U.S.C.§ 543.

First, requiring the Receiver to deliver the four parcels to the Debtor would be a fruitless and meaningless gesture in light of the court's decision to grant relief from the stay.  The relief

---

[5] *See* 11 U.S.C. § 1107 (rights, powers, duties of debtor in possession); Fed. R. Bankr. P 9001(11) (defining "trustee" to include "debtor in possession").

granted on the Lift Stay Motion will permit the Bank to return to state court to pursue its state law remedies, including the receivership.

Second, as the *Northgate Terrace* opinion suggests, this court must consider the likelihood of reorganization.  The court's conclusions with respect to the Lift Stay Motion apply equally here: the court has profound doubts about the likelihood of a successful reorganization. As noted above, the Debtor has limited income as a waitress and now lives in Michigan, according to the petition.  The apartments are in Illinois.  She has no counsel and was unprepared at the hearing to serve as a fiduciary.

It is true that there has been no meaningful showing of the Debtor's misconduct in managing the apartments—a factor under *Northgate Terrace*.  The court also notes, after reviewing the Debtor's Exhibit C, that the Receiver may have had his own difficulties managing at least the Hickory Hill property.  Nevertheless, requiring the Receiver to relinquish the property would produce unnecessary delay and expense, especially given the court's decision to lift the automatic stay.  Moreover, requiring turnover sixteen months after the state court appointed the Receiver would likely confuse tenants about where to send rent payments or invite unscrupulous tenants to feign confusion as an excuse for skipping payments.  The prospect is fraught with opportunities for waste and mischief.  The court notes, too, that even if the court declined to excuse the Receiver from his obligations under 11 U.S.C. § 543, that decision would not magically vacate or even undermine the state court's foreclosure judgment which, given the court's decision on the Lift Stay Motion, will soon vest title in the Bank as the successful purchaser at the foreclosure sale. At this point in time, after the Bank has become the successful bidder at the foreclosure sale, any of the Receiver's shortcomings, even if proven, will be visited upon the Bank—the proponent of the Receiver Motion.

Finally, even if the court were at liberty to disregard the state court's foreclosure judgment and resulting sale, the court would be loathe to return management of the apartment complexes to the Debtor, whose presentation in court yesterday did not inspire confidence in her ability to navigate through the complex channels of Chapter 11 without benefit of counsel.

For these reasons, the court will grant the Receiver Motion in a separate order, consistent with this opinion, which the Bank's counsel shall prepare and file forthwith.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Bank's counsel shall forthwith submit revised proposed orders, consistent with this Opinion and Order, granting the Lift Stay Motion and the Receiver Motion.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon *pro se* debtor Ying Hua Tam (by first class U.S. Mail), the United States Trustee, John T. Gregg, Esq., and Patrick E. Mears, Esq., attorneys for Marquette Bank.

END OF ORDER

**IT IS SO ORDERED.**

Dated August 9, 2012



Scott W. Dales
United States Bankruptcy Judge